progresses, are constantly making and changing the place, which was the case here.

The court, also, at request of counsel for plaintiff, instructed the jury, in effect, that this block and fall constituted an elevating machine or hoisting apparatus, within the provisions of section 20, c. 415, p. 468, of the Laws of 1897 as amended by chapter 192, p. 351, of the Laws of 1899, and that the failure of defendant to cause the opening in the floors to be inclosed or fenced in as required thereby was some evidence of negligence on its part. Counsel for defendant duly excepted, and requested the court to instruct the jury that the statute was not applicable, and excepted to the refusal of the court to so charge. We are of opinion that this was error, for the reason that the third floor had not been laid, and therefore the statute imposed no duty at that time with respect to inclosing or fencing the opening. The statute provides as follows:

"If elevating machines or hoisting apparatus are used within buildings in the course of construction for the purpose of elevating material to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be inclosed or fenced in on all sides by a barrier at least eight feet in height."

This statute manifestly was not designed to protect the men employed in unloading the material at the top of a shaft or opening from falling into it, but rather to protect others working or lawfully on a floor which had been laid up to the shaft or opening from walking into it, and to protect all lawfully on the premises against falling material. This was neither a shaft nor an opening in the third floor, on which only the walls and girders and part of the floor beams had been laid, within the contemplation of the statute.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

In re RIVERSIDE DRIVE AND PARKWAY IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 13, 1908.)

1. EMINENT DOMAIN (§ 265*)—ASSESSMENT BY COMMISSIONERS—COMPENSATION.
     Compensation awarded commissioners in proceedings by a city to acquire property for a public improvement is to recompense them for services actually rendered.

     [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

2. EMINENT DOMAIN (§ 265*)—ASSESSMENT BY COMMISSIONERS—COMPENSATION.
     A city is entitled to a speedy termination of its proceedings to acquire property for a public improvement, and the commissioners cannot unnecessarily prolong them to provide an excuse for fees.

     [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

3. EMINENT DOMAIN (§ 265*)—ASSESSMENT BY COMMISSIONERS—COMPENSATION.
     Commissioners in proceedings by a city to acquire property for a public improvement cannot by mistake or otherwise encourage opposition to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

assessment of the property affected and profit by it in additional compensation.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 265.*]

4. EMINENT DOMAIN (§ 265*)—ASSESSMENT BY COMMISSIONERS—COMPENSATION.
    On an application to tax costs in proceedings by a city to acquire property for a public improvement, evidence *held* to justify the award of compensation to the commissioners in a specified sum and the denial of compensation asked for by the engineer employed by the city.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

Appeal from Special Term, New York County.

In the matter of the application of the city of New York to acquire property for the Riverside Drive and Parkway. From an order taxing costs, thereby determining the compensation of the commissioners and their engineer, the commissioners appeal. Affirmed on opinion of the court below.

The following is the opinion of the court below (Dowling, J.):

The commissioners in this proceeding were appointed by the Supreme Court on March 13, 1900. On or about December 9, 1902, they completed their labors, in so far as making awards was concerned. For the services so rendered during the period ending November 29, 1902, they received an aggregate in fees and additional allowances of $27,200. They then devoted four years and five months of elapsed time to the preparation of a preliminary report as to assessments, wherein they were assisted by an engineer employed by the city at an agreed compensation of $10 per day. In the performance of such duties the commissioners refused to accept the services and assistance of the computers in the employ of the bureau of street openings, usually assigned to the largely clerical function of making the computations, and who are paid monthly salaries by the city. The commissioners themselves insisted on personally making the computations. For their services for the period commencing November 9, 1902, and ending June 10, 1907, the commissioners received in the aggregate for fees and additional allowances the sum of $72,860. The engineer during the same period has received the sum of $13,390 for services in assisting them. For their services from June 10, 1907, to March 14, 1908, the commissioners now ask for the taxation of their costs in the aggregate amount of $5,820, besides an extra allowance, and the engineer asks for the sum of $2,020.

During the period in question the commissioners held various sessions, upon which their claims are based. From an examination of the record and of the affidavits I have prepared the following summary, showing the character of the work, if any, done on the various dates set forth and the purposes as alleged of the different sessions. Sessions are claimed to have been held, entirely devoted to the taking of testimony, numbering in all 5; sessions are claimed to have been held, partly devoted to the taking of testimony and partly to the consideration in executive session of the objections and testimony, numbering in all 2; sessions are claimed to have been held, partly devoted to the taking of testimony and partly to the hearing of objections, numbering in all 3; sessions are claimed to have been held, partly devoted to the hearing of argument on objections and partly to the consideration of objections and testimony in executive session, numbering in all 15; sessions are claimed to have been devoted to the hearing of objections, numbering in all 19; adjournments were had, as shown by the minutes, when the applicants claim that the same are erroneous and that executive sessions were in fact held, numbering in all 6; executive sessions are claimed to have been held, following the failure of objecting parties to appear and testify, numbering in all 28; and sessions are claimed to have been held devoted entirely to the consideration in executive session of the objections and testimony, numbering in all 132. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

testimony taken during this entire period covers some 455 typewritten pages of the minutes in all. I have examined the record covering the dates from June 11, 1907, to March 14, 1908, inclusive. I have also examined the papers submitted on the prior applications for additional allowances herein, upon which orders were made herein on May 1, 1906, and July 2, 1907. It is but fair to say that the city's legal representatives have steadily and vigorously resisted every application for additional allowances and for costs heretofore made, as they are now opposing the present one. In the opposing affidavit the city alleges that the commissioners have assessed the property affected, as well as the city, an aggregate of $1,649,938.60 in excess of the total cost and expense of the proceeding, in violation of statute. The natural effect of this has been to increase the number of the objecting parties, as well as the vigor of their opposition, and to prolong the proceeding unnecessarily. The commissioners do not deny that in some way they levied a larger sum by way of assessment than was required; but their reply is that the reduction of the assessment to a proper amount can be accomplished by scaling it down uniformly by a fixed percentage, which they claim will be purely a clerical operation, neither costly nor prejudicial.

Presumably this work is to be done by the computers, whose assistance the applicants refused to avail themselves of when they insisted on making the computations themselves. The city claims that as a result of the delay caused by the commissioners' method of procedure there has been a loss of interest to the city for upwards of five years on a sum in excess of $1,500,000. There is no claim that the commissioners have been guilty of any fraud or corrupt practices, but it is claimed that their deliberations have been unduly and unjustifiably prolonged. While they should be compensated for services actually rendered for the period in question, so far as the same were necessary and proper, no adequate necessity appears for the extraordinary number of executive sessions claimed to have been held by them. I have examined the record carefully, and have reached the conclusion that the commissioners under no possible theory have earned more than the amount chargeable for costs for sessions on the following days: (a) Those whereon they took testimony, viz., November 27 and December 19 and 31, 1907, and January 8, and 17, 1908, making 5 in all; (b) those whereon objections were heard, viz., June 11, 12, 13, 14, 17, 18, 19, 24, 25, 26, and 29, July 10, October 17, and December 2, 17, 18, and 23, 1907, and January 7 and 28, 1908, making 19 in all; (c) those whereon testimony was taken and objections were heard, viz., December 4 and 30, 1907, and January 15, 1908, making 3 in all; (d) those devoted in part to the taking of testimony, viz., July 26 and December 11, 1907, making 2 in all; (e) those devoted in part to the hearing of argument on objections, viz., June 28, July 9, 18, and 25, September 16, November 18, and December 6, 10, and 16, 1907, and January 13, 14, and 24, February 14 and 27, and March 12, 1908, making 15 in all. This makes a total of 44 sessions. Allowance has been made for these various sessions on the ground that they were held in good faith, were necessary, and occupied a sufficient period of time to justify the allowance, because the commissioners have made affidavits that sustain this contention, while the city's opposing affidavit does not set forth the actual time devoted on each day.

It is, however, apparent from the inspection of the minutes themselves that much of the so-called argument on objections could have occupied but a short time; much of it a dialogue, rather than an argument. Many days will be found when, even after entering at length upon the record objections in writing filed by attorneys, the whole proceedings are embraced in four or five typewritten pages. The compensation awarded commissioners is to recompense them for services actually rendered, and the city is entitled to have proceedings speedily terminated, and not unnecessarily and unjustifiably prolonged to provide an excuse for fees. Nor can commissioners by mistakes or other means encourage opposition and profit by the result.

Based on the actual attendance of the applicants at these sessions, as shown by the minutes, the following sums, and no more, will be awarded to the respective commissioners. To Frank R. Houghton, $440 (he having attended all the sessions); to John P. O'Brien, $430 (he having been absent on June 11th); to John J. Ryan, $370 (he having been absent June 11th, 13th,

14th, 17th, 18th, and 24th and September 16th). No ground whatever is shown for the compensation asked for the engineer, Waters, nor does the necessity for his continued daily service to the commissioners appear, and therefore his application for the sum of $2,020 is denied. The city's items of disbursements will be taxed as submitted.

Settle order on notice.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Lyttleton Fox, for appellants.
J. P. Dunn, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of the court below. Order filed.

---

PEARSALL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 11, 1908.)

1. MASTER AND SERVANT (§ 217*)—RAILROADS—ENGINEERS—RISK ASSUMED.
An experienced locomotive engineer assumed the risk of injury resulting from the improper location of a semaphore, where he had passed the place every other day for two months, and, if the semaphore was improperly located, he had known it for months before the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 589; Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§ 219*)—ASSUMPTION OF RISK—APPLICABILITY OF DOCTRINE.
The rule that an employé does not assume a risk of injury arising from the employer's negligence does not apply at common law, nor to open, obvious risks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

Appeal from Trial Term, Onondaga County.

Personal injury action by David A. Pearsall against the New York Central & Hudson River Railroad Company. From a judgment of nonsuit, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George H. Denison and F. J. O'Neol, for appellant.
Hiscock, Doheny, Williams & Cowie, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs. The action was brought to recover damages for personal injuries, alleged to have been caused by the defendant's negligence. The case, when first tried, resulted in a verdict for the plaintiff. There was an affirmance in the Appellate Division, but a reversal in the Court of Appeals. 189 N. Y. 474, 82 N. E. 752.

The action was one at common law. Plaintiff was an engineer, and was running a fast train west-bound. When approaching the De Witt yard, near Syracuse, the train came upon a switch set for a cross-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes